FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 APR 26 PM 4: 54

CLERK
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. CR605-026 |
| EMORY LINHART LARISCY, ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant Emory Lariscy has filed a motion contesting the voluntariness of certain statements he made to the agents investigating this case, statements which form the basis of his prosecution for threatening to kill the President of the United States.

At an evidentiary hearing conducted on April 20, 2006, the Court heard testimony from Special Agent William Griffin of the United States Secret Service and Lt. Tony Taylor of the Sylvania Police Department. The unrebutted testimony of these witnesses establishes the following facts.

On August 22, 2005, Agent Griffin received information from an FBI agent that Emory Lariscy of Sylvania, Georgia had threatened the life of the

President during a telephone call to the FBI office. Agent Griffin enlisted the assistance of Lt. Taylor, who was familiar with Lariscy and had previously investigated a burglary committed at his residence. Lt. Taylor called Lariscy at his home at around 10:30 a.m. and asked him if he was trying to contact "someone" in Savannah. When Lariscy confirmed that he was endeavoring to do so, Lt. Taylor stated that the person he wanted to talk to was at the Sylvania Police Department. Lariscy indicated that he would be right there. Some fifteen minutes later, Lariscy arrived at the police station driving his personal vehicle.

Lt. Taylor escorted Lariscy to an office inside the police station and introduced him to Agent Griffin, who displayed his credentials and stated that he wanted to speak with Lariscy about any previous statements he had made threatening the life of the President. Agent Griffin explained that Lariscy was not in custody and was free to leave at anytime. Using a standard Secret Service form, Agent Griffin then proceeded to advise defendant that he was entitled to remain silent, that any statements he made could be used against him, and that he was entitled to speak with a lawyer before submitting to any questioning. Gov't Ex. 3. Lariscy

acknowledged his understanding of this advice but refused to execute a formal waiver of his rights. He nevertheless agreed to speak with the agent. Lariscy readily admitted that he had previously threatened the life of the President and stated that he meant what he said. He described his proficiency with firearms and stated that if the President came to this area he would carry out his threat. Defendant denied that he was taking any medications for any psychiatric problems. He exhibited no signs of intoxication or abnormal behavior during the interview. According to Lt. Taylor, Lariscy appeared to be "confident" and quite talkative during the interview, repeatedly making threats against the President.

At the conclusion of the interview, Lariscy invited the agents to come to his residence. Before departing the police station, Lariscy agreed to surrender a 9 millimeter pistol which he had informed the agents was located inside his vehicle. Lariscy then drove his personal vehicle to his residence as the agents followed in their own vehicles. When he arrived at his home, Lariscy invited the agents inside and showed them several weapons which he owned.

On August 25, 2005, Agent Griffin executed a warrant for Lariscy's arrest. During a booking procedure at the United States Marshal's office, Agent Griffin once again read defendant his <u>Miranda</u> rights. On this occasion, Lariscy agreed to execute a written waiver of his rights. He then made some additional statements threatening to do harm to the President.

There is no evidence of any police coercion in this case, which is an essential predicate to finding a confession to be involuntary. <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986). A defendant's statement "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." <u>Id</u>. at 163. Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession. <u>Id</u>. at 163 n.1; <u>United States v. Mendoza-Cecelia</u>, 963 F.2d 1467, 1475 (11th Cir. 1992).

There is no evidence that the agents employed any physical force, intimidating tactics, or inducements in order to secure a confession from the defendant. Lariscy, who did not appear to be laboring under any sort of disability, came to the police station of his own accord, was informed that

4

he was not in custody and was free to leave, and then freely made incriminating statements to the investigators. Rather than being coerced, Lariscy seemed eager to inform the agents that he intended to kill the President of the United States.

The Court finds that defendant's confession at the Sylvania police station was the "'product of an essentially free and unconstrained choice by its maker.'" <u>Devier v. Zant</u>, 3 F.3d 1445, 1445-56 (11th Cir. 1993) (quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961)). Defendant's later statement following his arrest, which was made after he was advised of his <u>Miranda</u> rights, was also entirely voluntary. At no time did the agents employ any coercive tactics in order to pry a confession out of the defendant. Accordingly, defendant's statements were entirely voluntary and are therefore admissible.

**SO REPORTED AND RECOMMENDED** this 26th day of April, 2006.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA